(No. 50572.—

KENNETH L. LENARD, Appellant, v. THE BOARD OF
EDUCATION OF FAIRFIELD SCHOOL DISTRICT
NO. 112 OF WAYNE COUNTY, Appellee.

*Opinion filed January 12, 1979.*

Drach, Terrell & Deffenbaugh, P.C., of Springfield, for appellant.

William E. Hoffee, of Fairfield, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The respondent, the Board of Education of Fairfield School District No. 112 (Board), dismissed Kenneth L. Lenard (petitioner) from his teaching position, the dismissal to be effective at the end of the 1973-74 school year. On April 25, 1974, petitioner filed for a writ of *mandamus,* seeking to have the circuit court of Wayne County direct respondent to reinstate petitioner to his teaching position for the 1974-75 school year. The circuit court dismissed the petition on the ground that *mandamus* was not an appropriate remedy; but, upon remand following an appeal, the circuit court ordered that petitioner be reinstated. The appellate court reversed (57 Ill. App. 3d 853), and we granted petitioner leave to appeal.

Petitioner was a tenured teacher, employed by the

Board. He held a high school teaching certificate, covering grades 6 through 12 (see Ill. Rev. Stat. 1973, ch. 122, par. 21—5), and, primarily, taught geography to students in the seventh grade. In March 1974 the Board notified petitioner that he would be honorably dismissed at the end of the school year because of a reduction in the number of teachers in the district. Petitioner then filed the instant petition, alleging that he was entitled to the teaching position held by a nontenured teacher, Richard Carter, who taught various subjects to students in the sixth grade.

The Board dismissed petitioner pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12), under which tenured teachers (those with "contractual continued service") could be dismissed without a hearing if the dismissal resulted from the Board's decision to decrease the number of teachers employed. Section 24—12 also provided, however:

"[I] n all such cases the board shall first remove or dismiss all teachers who have not entered upon contractual continued service before removing or dismissing any teacher who has entered upon contractual continued service and who is legally qualified to hold a position currently held by a teacher who has not entered upon contractual continued service." Ill. Rev. Stat. 1973, ch. 122, par. 24—12.

The outcome of this appeal turns on the meaning of "legally qualified," as contained in the just-quoted provision. Petitioner contends that he is "legally qualified" to hold Carter's position merely by virtue of holding a teaching certificate covering grades 6 through 12. The Board, however, contends that to be "legally qualified" a teacher must also meet the semester-hour requirements of Circular Series A, No. 160 (A—160), a regulation of the office of the Superintendent of Public Instruction (Superintendent), now the State Board of Education.

In reversing the circuit court's issuance of the writ, the appellate court held that satisfaction of the teacher-

certification requirements did not automatically make the petitioner "legally qualified" to hold Carter's positon; A—160 also must be satisfied. Because it found that petitioner did not satisfy the semester-hour requirements of A—160, the appellate court concluded that petitioner was not "legally qualified" to hold Carter's position.

To be certified to teach in Illinois, all public school teachers must comply with article 21 of the School Code (Ill. Rev. Stat. 1973, ch. 122, pars. 21—1 through 21—25). Section 21—1 provides generally that no one may be certified "who is not of good character, good health, a citizen of the United States and at least 19 years of age." Section 21—5 governs the high school certificate, and provides:

> "It shall be issued to persons who have graduated from a recognized institution of higher learning with a bachelor's degree and with not fewer than 120 semester hours including 16 semester hours in professional education, 5 of which shall be in student teaching under competent and close supervision and with one or more teaching fields. The academic and professional courses offered as a basis for the high school certificate shall be approved by the Superintendent of Public Instruction in consultation with the State Teacher Certification Board." (Ill. Rev. Stat. 1973, ch. 122, par. 21—5.)

It is not disputed that petitioner satisfied these requirements, as must all teachers desirous of holding a high school certificate. Petitioner, however, contends that, having met the requirements, he is "legally qualified" under section 24—12. In our view, however, had the legislature meant to equate "legally qualified" with "certified" it could easily have used the word "certified," or "certificated."

A—160, as promulgated in 1973 by the Superintendent, provided in pertinent part:

> "Chapter 6 The Instructional Program
> * * *

6—2.7 The instructors shall meet the semester hour requirements for the areas of their teaching assignment as outlined in Chapter 9, Section 5 of this document.

\* \* \*

Chapter 9 Standards Governing Preparation of Professional Personnel

\* \* \*

Chapter 9—5 Standards for Secondary Teachers

The quality of instruction depends upon many factors; however, a teacher should have substantial college or university training in the field directly related to the subject matter that is being taught.

Although certain basic requisites concerning specifics of credits for certification are an integral part of minimum standards, other factors are important. Evaluation of staff and programs cannot be based exclusively on statistical or quantitative measures. The results of the school program must be considered as part of the evaluation which depends to a great extent upon the professional judgment of the evaluators.

\* \* \*

Recommendations for educational requirements for subjects taught on the secondary level may be found on the following pages.

\* \* \*

x. Junior High or Departmentalized Upper Elementary Grades

18 semester hours in each field, including at least five semester hours in each course where subject matter areas are divided into two or more specific courses. This requirement applies to teachers of the 6th, 7th and/or 8th grade where the organizational pattern is a junior high or the instructional pattern is in part or entirely departmentalized. When departmentalized in part, the requirement only applies to the departmentalized teachers."

Petitioner contends that A—160 nullifies article 21 of the School Code and is therefore *ultra vires* and void. In other words, petitioner's contention is that the Superintendent lacked the statutory authority to promulgate A—160. The powers and duties of the Superintendent are set forth in article 2 of the School Code (Ill. Rev. Stat.

1973, ch. 122, pars. 2—1 through 2—3.39). Section 2—3.3 directs the Superintendent to supervise the public schools. Section 2—3.6 directs him to make rules to carry into effect all laws for establishing and maintaining free schools. Finally, section 2—3.25 directs him to determine "efficient and adequate standards for the physical plant, heating, lighting, ventilation, sanitation, safety, equipment and supplies, *instruction and teaching*, curriculum, library, operation, maintenance, administration and supervision, and to grant certificates of recognition to schools meeting such standards by attendance centers or school districts \*\*\*." (Emphasis added.) The Board asserts that all three of these sections provide the statutory authority for A—160. The appellate court noted that these provisions delegated broad powers to the Superintendent, but focused specifically on section 2—3.25 as the provision which granted authority to the Superintendent to enact the A—160 standards in question. We agree with and adopt the appellate court's opinion on this point. As stated, article 21 sets forth the general requirements for teacher certification in Illinois. A—160 does not impose additional prerequisites for certification but, rather, requires that secondary and certain upper elementary teachers have a specific minimum number of semester hours in each field to be taught. Promulgation of such semester-hour requirements was within the Superintendent's delegated authority.

Petitioner contends that he is "legally qualified" even if the Superintendent is found to have authority to establish teaching standards. The evidence reveals that Carter taught mathematics and other subjects to sixth-grade students at the time in question. The Board asserts that the mathematics class taught by Carter was departmentalized, and that, because petitioner had substantially less than 18 semester hours of mathematics, he did not meet the requirements of section 9—5(x) of A—160. Thus,

according to the Board, petitioner was not entitled to take over the teaching position held by Carter. Petitioner argues that the mathematics class was not in fact departmentalized, and did not, therefore, require a teacher with 18 semester hours of mathematics. The evidence, however, is to the contrary. "Departmentalization" had been defined in a policy statement by the Director of Recognition and Supervision in the Illinois Office of Education as "any variation from a 'home room' or 'self-contained' type of instructional pattern. Variations could range from total departmentalization to a single class period per day outside the self-contained room." The evidence indicates that, according to student needs, some of the students in Carter's sixth-grade class were moved to other rooms to be taught mathematics by other teachers while students other than Carter's were moved to his room to be taught mathematics by him. This evidence satisfies us that mathematics was taught in a departmentalized fashion.

Petitioner contends that it is arbitrary and discriminatory to impose higher standards on a teacher merely because that teacher is in a departmentalized situation. We feel, however, that there is a rational basis for the distinction. (See, *e.g., Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 511; *Edelen v. Hogsett* (1969, 44 Ill. 2d 215, 221.) Departmentalized teaching situations tend to require specialized training on the part of the teachers. The departmentalization here was based on student needs. There is no evidence that the classes were designated "departmentalized" as a pretext by which the Board could avoid petitioner's reinstatement.

Petitioner, who had taken only two mathematics courses in college, further asserts that he could have taken the additional mathematics courses necessary. The Board, under section 24—12 of the School Code, had to make its decision and notify petitioner at least 60 days before the end of the 1973-74 school year. It could not base a

decision to retain petitioner on speculation that he could or would take the additional courses he would need to meet the 18-semester-hour requirement.

It is petitioner's contention that the specific standards in A—160 are unreasonable, arbitrary, and discriminatory. In support of this contention, he alleges that the standards were not applied consistently and that it was possible that other school districts ignored the standards. Such allegations, if substantiated, would more appropriately be directed to the State Board of Education, which has assumed the powers and duties of the Superintendent (see Ill. Rev. Stat. 1973, ch. 122, par. 1A—3).

Petitioner also points out that section 9—5(x) was revised in 1974 to allow teachers five years in which to gain the necessary 18 semester hours. Consideration of the 1974 revision, however, does not persuade us that the prior version was unreasonable.

Petitioner lastly contends that A—160 violates the purpose of the Illinois teacher tenure act, in that it allows the Board to use its discretion in an arbitrary and capricious manner. On the contrary, rather than providing school boards with unbridled discretion over teacher dismissals, A—160 furnishes objective standards for measuring a teacher's qualification under section 24—12 of the School Code. Moreover, according to the testimony of both the Superintendent of School District No. 112 and the Director of the Department of Recognition and Supervision, these standards are mandatory, a requisite condition to qualify for aid from the common school aid fund. In our opinion, such objective, specific requirements are in furtherance of the object of the teacher tenure act, which is to assure continuous service on the part of teachers of ability and experience. *Donahoo v. Board of Education* (1952), 413 Ill. 422, 425.

We conclude that the A—160 standards for teachers, promulgated by the Superintendent pursuant to authority

delegated by the School Code, are to be incorporated into the meaning of the phrase "legally qualified" as it appears in section 24—12 of the Code. Because petitioner did not meet the A—160 standards for the teaching position held by Carter, he was not "legally qualified" for that position and therefore not entitled to be reinstated.

Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*